UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

BROADWAY CITY, LLC,                              Chapter 7
                                                 Case No. 03-14928 (JMP)
          Debtor.
--------------------------------------------------------X
ROBERT L. GELTZER, As Chapter 7 Trustee
of BROADWAY CITY, LLC

          Plaintiff
     v.                                          Adversary Proceeding No.:
                                                 05-2365 (JMP)
GAMETECH INVESTORS LLC,

          Defendant
--------------------------------------------------------X

## MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Appearances:

KLESTADT & WINTERS, LLP
292 Madison Avenue, 17th Floor
New York, New York 10017

> John E. Jureller, Jr., Esq.
> Sean C. Southard, Esq.
>
> Counsel for Gametech Investors LLC

BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104

> Lawrence P. Gottesman, Esq.
> Thomas J. Schell, Esq.
> Scott H. Kaiser, Esq.
>
> Counsel for Robert L. Geltzer as Chapter 7 Trustee of Broadway City, LLC

JAMES M. PECK
United States Bankruptcy Judge

Before the Court is defendant's Motion for Summary Judgment in an adversary proceeding commenced by the chapter 7 Trustee of Broadway City, LLC (the "Debtor") against a former investor in the Debtor that, as part of a prepetition recapitalization of the enterprise and as a means to attract additional investment, redeemed its membership interests and, in the process, elevated its status from equity holder to secured creditor. The litigation seeks to avoid the secured note issued to the investor at the time of this redemption as a fraudulent conveyance.

The investor, defendant Gametech Investors LLC ("Gametech"), argues that it is entitled to judgment in its favor by virtue of certain orders entered by the Court in the Debtor's bankruptcy case before appointment of the Trustee, notably a Cash Collateral Order (defined below) that concerned liens first granted to Gametech in connection with the redemption. As of the petition date, these liens were held by Gametech's direct assignee and secured by an amended and restated version of the secured note that had been issued originally to Gametech. Under the terms of the Cash Collateral Order, the validity of these liens is no longer subject to objection.

The question presented is whether the chapter 7 Trustee, Robert L. Geltzer, (the "Trustee" or "Plaintiff") lost the right to bring avoidance claims against Gametech and should be precluded from pursuing this litigation as a result of the Cash Collateral Order, which includes an acknowledgment as to the validity of the liens held by Gametech's assignee and language confirming that these liens are deemed valid if not challenged by the Trustee within a stipulated period of time after conversion of the case to a case under chapter 7. This adversary proceeding was not commenced until after expiration of the stipulated period after conversion for the Trustee to object to the security interest.

As discussed below, the Court denies Gametech's Motion for Summary Judgment, finding that a determination pursuant to a cash collateral order that an assignee's lien is deemed valid is not equivalent to a determination that such lien may not be avoided in subsequent litigation brought by the Trustee against the assignor.

*Factual Background*

The Debtor in this case was a limited liability company formed for the purpose of owning and operating Broadway City, an interactive amusement center in Manhattan. The defendant, Gametech, held a 49.5% interest in the Debtor until February 2000. During the time that Gametech was a member of the Debtor, Richard Simon was the Debtor's managing member and he, along with his family, owned the remaining 50.5% equity interest. On August 4, 2003 (the "Petition Date"), the Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and an official committee of unsecured creditors was appointed (the "Committee"). The case converted to a case under chapter 7 on June 23, 2004 upon the motion of the United States Trustee. The Plaintiff was appointed chapter 7 trustee of the Debtor on June 24, 2004.

Prior to conversion, the Debtor operated as a debtor-in-possession. Soon after filing its chapter 11 petition, the Debtor sought approval to use cash collateral, which resulted in a stipulation and order dated October 23, 2003 ("Cash Collateral Order"), negotiated between the Debtor, the Committee and Chitech Investments, LLC ("Chitech") whose claim was listed on the Debtor's schedules in an amount greater than $3.4 million and was secured by all of the Debtor's assets. The Cash Collateral Order acknowledged that "Chitech possesses a perfected secured interest" in the Debtor's cash collateral, but also provided that in the event of conversion, "the Trustee shall have ninety (90) days from the first date set for the §341 first meeting of creditors

3

to object to Chitech's security interest after which period Chitech's aforesaid security interest shall be deemed valid." Gametech and the Trustee (who had not yet been appointed) were not involved in the negotiations nor were they parties to the stipulated Cash Collateral Order.

On February 26, 2004, Chitech filed a motion seeking relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code (the "Lift Stay Motion"), which was granted and allowed Chitech to liquidate its collateral and apply the proceeds towards its outstanding secured claim.

Chitech's security interest exceeded the value of the Debtor's assets making reorganization impossible. As a result, among other reasons, the United States Trustee made a motion to convert (the "Conversion Motion"). The Committee objected to both the Lift Stay Motion and the Conversion Motion, but neither the Committee nor any other parties in interest objected to the validity or amount of Chitech's secured claim.

The Trustee commenced this adversary proceeding on August 3, 2005[1] asserting fraudulent conveyance claims against Chitech[2] and Gametech pursuant to sections 273, 274, 275 and 278 of the New York State Debtor and Creditor Law and sections 544 and 550 of the Bankruptcy Code. The Trustee's complaint seeks to avoid as constructively fraudulent, obligations incurred and transfers made pursuant to a redemption agreement entered into by Gametech and the Debtor on February 9, 2000 (the "Redemption Agreement") (over three years prior to the Petition Date), whereby the Debtor redeemed Gametech's ownership interest for $6 million. At the time of the Redemption Agreement, Gametech had invested an aggregate of $5.3

---

[1] The Trustee's complaint was amended on August 10, 2005.

[2] Chitech settled with the Trustee by Stipulation of Settlement approved by the Court on June 13, 2006 (the "Stipulation"). In the Stipulation, the parties acknowledged that the Trustee did not object to Chitech's security interest within 90 days of the first meeting of creditors as set forth in the Cash Collateral Order and therefore Chitech's security interest was deemed valid. Pursuant to the Stipulation, Chitech agreed to pay $130,000 to the Trustee and to withdraw its proof of claim.

4

million in the Debtor. In conjunction with the Redemption Agreement, Gametech and the Debtor entered into a Senior Secured Note (the "Gametech Note") and Security Agreement (the "Gametech Security Agreement," and together with the Redemption Agreement and Gametech Note, the "Redemption Agreements").

Contemporaneously with the Redemption Agreements and as part of a related transaction to infuse new capital, Chitech and the Debtor entered into a purchase agreement ("Chitech Purchase Agreement"), whereby Chitech invested $2.2 million in exchange for a 30% equity interest in the Debtor. Chitech, pursuant to a confidential side agreement, placed an additional $300,000 in an escrow account to be used only to purchase goods and equipment for the Debtor's business operations. The Chitech Purchase Agreement constrained the Debtor's use of the money invested by Chitech; it required $1 million to be paid to Chase Manhattan Bank (the only secured creditor other than Gametech) and $1 million could be used only to purchase assets that pursuant to the Gametech Security Agreement would be subject to Gametech's security interest.

In November 2000, Chitech agreed to invest an additional $900,000 in the Debtor in exchange for an incremental 10% equity interest. To facilitate this investment, Gametech agreed to defer interest payments on the Gametech Note for approximately four months and entered into an amendment and restatement of the Gametech Note (the "Amended Note").

On January 31, 2002, the Debtor and Gametech entered into the "Purchase Price Reduction Agreement" pursuant to which the principal amount of the Amended Note was reduced from $6 million to $4 million in recognition of the decline in value of the Debtor's business. Contemporaneously with the Purchase Price Reduction Agreement, Gametech sold and assigned the Amended Note and Gametech Security Agreement to Chitech pursuant to a

5

Loan Purchase and Security Agreement dated January 31, 2002 (the "Loan Purchase Agreement"). As of the date of the Loan Purchase Agreement, Gametech had received more than $1.3 million in payments on the Gametech Note (as amended).

The Amended Note, now owned by Chitech, was amended and restated a second time (the "Second Amended Note") on February 27, 2002 to reduce the principal amount from $4 million to $3.5 million in exchange for a further equity interest in the Debtor.

## *Discussion*

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, entitles a party to summary judgment if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is considered to be "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. Atkins*, 33 F. Supp.2d 209, 213 (2d Cir. 2004). A "genuine issue" exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson at 248*; *American Home Assur. Co. v. ZIM JAMAICA*, 418 F.Supp.2d 537, 543 (S.D.N.Y. 2006) ("If, from the evidence in the record, a reasonable inference can be drawn in favor of the nonmovant, the summary judgment motion shall fail."). "When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). When determining whether there are material facts in dispute, a court must evaluate the evidence

6

presented "in the light more favorable to the party opposing the motion." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1352 (2d. Cir. 1994) (citations omitted). The Court must also resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *American Home* at 543 ("a court must accept as true the nonmovant's allegations, and draw all reasonable inferences from such allegations in the nonmovant's favor.").

In this case, although a number of facts relating to the Trustee's fraudulent conveyance claims are in dispute, the material facts relevant to the investments by Chitech in the Debtor and the proceedings in this Court prior to commencement of this adversary proceeding are undisputed. The pure legal question that is ripe for summary judgment is whether Gametech, as original holder of the secured claim against the Debtor and as assignor of the Amended Note and Gametech Security Agreement pursuant to the Loan Purchase Agreement, is entitled to judgment in its favor as a result of the Cash Collateral Order that validated the security interest asserted by Chitech, Gametech's assignee.

<u>Cash Collateral Order Did Not Adjudicate Right to Avoid Gametech Transfers</u>

Gametech has asserted that because Chitech's security interest has been deemed valid pursuant to the Cash Collateral Order (due to the Trustee's failure to object to that security interest within ninety days from the first date set for the §341 first meeting of creditors), Gametech's security interest must also be deemed valid because Chitech's security interest originated from the sale and assignment of the Amended Note and Gametech Security Agreement. Gametech argues that because the Debtor's obligations to Chitech are based on the original extension of credit made by Gametech to the Debtor, the Cash Collateral Order effectively bars the Trustee from challenging the validity or enforceability of the transaction

7

between Gametech and the Debtor, including actions to avoid the transfers made pursuant to the Redemption Agreements.

Gametech's argument fails for several reasons. Given a debtor's immediate and critical need to use cash collateral, orders authorizing the use of cash collateral are typically negotiated on an expedited basis with secured lenders and creditors' committees during the early stage of chapter 11 cases to avoid time-consuming and costly litigation that might threaten the reorganization objectives of the debtor. Ordinarily, these cash collateral stipulations reflect negotiation and compromise and are intended to give adequate protection only to parties claiming an interest in cash collateral (as that term is defined in § 363(a) of the Bankruptcy Code). Questions of lien validity often are tabled for future resolution so that the debtor's urgent need for cash can be met and possibly time consuming litigation deferred or avoided.

Here, Chitech conditioned its consent to the Debtor's use of cash collateral upon a stipulation that, among other things, acknowledged the validity of the liens securing its claims. At the time, Gametech was not a party to the bankruptcy case, was not entitled to adequate protection, had no interest in cash collateral and its consent was not required for the Cash Collateral Order. Gametech, as a stranger to the cash collateral negotiations, no longer had any claim against or interest in the Debtor and should not benefit from the claim treatment negotiated by Chitech with respect to the Second Amended Note.

The Cash Collateral Order never was intended to immunize Gametech from litigation risk or preclude the Trustee from pursuing potential avoidance actions against Gametech. Gametech, having sold its claim prepetition, had no continuing interest in cash collateral and was not entitled to any protections under that order. *See Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.)*, 238 B.R. 558, 578 (Bankr. S.D.N.Y. 1999) (finding that using cash

8

collateral stipulation to insulate parties other than secured lender "would lead to an absurd and unfair result" and "[i]f the rights of others were being affected by the stipulation, they would have, by necessity, been parties to the stipulation."); *Philip Servs. Corp. et al. v. Luntz, et al. (In re Philip Services (Delaware), Inc.*, 267 B.R. 62, 70 (Bankr. .D. Del. 2001) ("approval of the Cash Collateral Stipulation between the Debtors and the Pre-Petition Secured Lenders was intended only to protect the interests of the Pre-Petition Secured Lenders").

The Cash Collateral Order did not foreclose any party's rights to object to the validity of Chitech's, let alone Gametech's, security interest. *See id.* (holding cash collateral order recognizing validity of prepetition lenders' secured claims, did not preclude defendants from later challenging validity of lenders' claims). Moreover, the language of the Cash Collateral Order preserved the Trustee's statutory right to bring avoidance actions, even against Chitech. The Cash Collateral Order specifically provides that:

> The pre-petition lien of Chitech described in this Stipulation and Order shall continue in full force and effect after the termination of the Debtor's authority to use Cash Collateral, to the same extent and degree to which they have force and effect by law prior to the execution of this Stipulation and Order, **and the parties shall neither lose nor gain with respect to legal rights held under the pre-petition and post-petition liens by reason of the operation of this Stipulation and Order** (emphasis added).

Even if Gametech's security interest granted in connection with the Redemption Agreements is assumed to be valid by virtue of the Cash Collateral Order, transfers made to Gametech may still be avoidable. Chitech's security interest was deemed *valid* under that order, but the Court made no determination, one way or the other, as to whether the lien may be subject to challenge as *avoidable* under applicable law. The Cash Collateral Order is explicit with respect to validation of Chitech's lien under certain circumstances but says nothing at all about waiving, releasing or otherwise resolving any potential avoidance claims against Gametech or

9

any other party. Determining the validity of a lien (as a result of approving a cash collateral stipulation between the parties) is not the same as determining that the lien may not be avoided. *See L.J. Hooker Int'l Fla., Inc. v. Gelina (In re Hooker Invs., Inc.)*, 131 B.R. 922, 927 (Bankr. S.D.N.Y. 1991) (recognizing that finding there is a contract does not preclude the possibility that facts exist which would make it voidable).

<u>Doctrines of Res Judicata, Collateral Estoppel, Judicial Estoppel and Law of the Case Do Not Bar Trustee's Claims</u>

Gametech has failed to meet the requirements necessary to bar the Trustee's prosecution of avoidance claims under the doctrines of *res judicata*, collateral estoppel, judicial estoppel or law of the case. For *res judicata* to bar a subsequent action, Courts consider whether "1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006).

The fact that the Court "so ordered" a stipulation among the parties regarding use of cash collateral does not constitute a final judgment on the merits. The Cash Collateral Order was simply a settlement blessed by the Court that should be given no more preclusive effect than a stipulation of settlement. *See Smith v. Cowden (In re Cowden)*, 337 B.R. 512, 531 (Bankr. W.D. Pa. 2006) (finding that settlement agreement was not a final judgment on the merits because the court did not evaluate the merits of the action, but only the propriety of the settlement).

Moreover, the parties to the Cash Collateral Order, namely the Debtor, the Committee and Chitech, are not parties to the adversary proceeding between the Trustee and Gametech. The Trustee, who did not become an estate fiduciary until eight months later, was not a party to the Cash Collateral Order nor is he in privity with the Debtor or the Committee. *See LM Ericsson Telecomm., Inc. v. Teltronics Servs., Inc. (In re Teltronics Servs., Inc.)*, 18 B.R. 705, 706

10

(E.D.N.Y. 1982) ("the former judgment cannot be *res judicata* as to the present parties because insufficient privity exists between the trustee and the bankrupt"); *Official Comm. of Unsecured Creditors of Grand Eagle, Inc. v. ASEA Brown Boverie, Inc.*, 313 B.R. 219, 227 (N.D. Ohio 2004) ("the Committee and the Trustee represent different interests").

Gametech also fails to establish that the Trustee's avoidance action against Gametech is the same cause of action as the cash collateral motion. The two proceedings are procedurally distinct. The motion did not state a cause of action at all but commenced a contested matter to obtain authority to use cash collateral upon a finding that Chitech was adequately protected. In contrast, any adjudication as to the extent, validity or priority of any interest in property, pursuant to Bankruptcy Rule 7001(2), must be determined by means of an adversary proceeding, not by motion. *See, e.g. In re Mariner Post-Acute Network*, 267 B.R. 46, 55 (Bankr. D. Del. 2001) (finding that a financing order granted at the outset of the debtor's case under emergency circumstances could not be presumed to have made a determination of the extent, validity or priority of interest in estate property).

Importantly, the Cash Collateral Order did not dispose of potential avoidance actions against Chitech, Gametech or any other party. As explained above, although the validity of Chitech's lien was resolved as part of the stipulated Cash Collateral Order, that is not the same as determining that the lien may not be avoided. *See L.J. Hooker,* 131 B.R. at 927.

Gametech confuses deemed validity of its assignee's lien with incontestability and immunity from litigation. Issue preclusion theories of collateral estoppel, judicial estoppel and law of the case also do not bar this action by the Trustee. *See L.J. Hooker Invs.*, 131 B.R. at 931 ("Collateral estoppel or issue preclusion prevent the relitigation of an issue that was raised, litigated and actually decided by a judgment in a prior proceeding") (internal quotations

11

omitted); *Philips Servs.*, 267 B.R. at 66 (law of the case doctrine "only applies to issues that were actually litigated and decided by the court"); *id.* at 67 (doctrine of judicial estoppel requires, among other things, that "the party to be estopped must be advancing an assertion that is inconsistent with a position taken during a previous litigation," unlike the Trustee here who has consistently asserted that the Gametech Note is avoidable as a fraudulent transfer).

### Fair Consideration is a Question to be Resolved at Trial

The issue of whether the Trustee can prevail against Gametech on the merits depends on whether the Debtor received fair consideration for the Redemption Agreements. The Court never addressed the question of fair consideration when it approved the Cash Collateral Order. Fair consideration is not an appropriate issue for summary judgment because there are multiple genuine issues of material fact in dispute, including, without limitation, the Debtor's solvency at the time of the Redemption Agreements, the value of Gametech's equity interest in the Debtor, and whether the Redemption Agreements were negotiated at arms-length or were made under duress.

### Certain Observations Regarding Gametech's Argument and the Secondary Loan Market

The Court's resolution of the question presented by Gametech has potential implications extending beyond this litigation. Whether a cash collateral order that benefits a current holder of secured debt can be construed to protect predecessors in the chain of title of the loan is particularly significant in an economy characterized by routine transfers of secured and unsecured claims. The secondary debt market has evolved over the last decade into an efficient and orderly market, and both prepetition and postpetition purchases and sales of secured loans have become commonplace in large chapter 11 cases.

12

Carried to its logical extreme, Gametech's summary judgment argument would impact this secondary trading market. Gametech's position, if followed, would lead to unanticipated consequences. Determinations made as to lien validity after transfer of a loan would "bless" the debt and relate back to the origination of the loan and immunize the original holder from avoidance liability. Such a result would likely impact representations, warranties and notices in the transfer documentation and pricing in this trading market for secured loans.

Finding that the Trustee is unable to pursue avoidance litigation against Gametech also may complicate procedures with respect to cash collateral stipulations. One such complication is a broadening of notice of the proposed stipulation to include earlier holders of the debt, if known, (even though such former holders no longer have any interest in cash collateral and may not be readily discoverable to the extent that certain market transactions are handled by brokers). The interpretation urged by Gametech also would impose the burden of more expedited and intensive due diligence shortly after commencement of a chapter 11 case by debtors and creditors' committees with respect to facts that support claims of lien avoidance and would require more careful drafting of lien validation provisions to expressly include or exclude potential causes of action for lien avoidance.

These policy implications, while intriguing, have played no role in the Court's resolution of the Gametech motion for summary judgment.

*Conclusion*

Gametech's Motion for Summary Judgment is denied. The Cash Collateral Order did not dispose of any potential avoidance claims against Gametech or any other party and does not preclude the Trustee from pursuing the causes of action alleged in this adversary proceeding. Numerous questions still need to be resolved at trial as to whether the Debtor received fair

consideration and was insolvent or rendered insolvent in connection with the Redemption Agreements.

The parties are directed to contact chambers to schedule a final pretrial conference to be held within the next thirty days. Counsel for the Trustee shall settle an order consistent with this decision.

Dated: New York, New York
January 25, 2007

*s/ James M. Peck*
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY COURT